**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BARRY J. HEILMAN,                          )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )          02:07cv1034
                                           )
ALLEGHENY ENERGY SERVICE                   )
CORPORATION,                               )
                                           )
                    Defendant.             )

**MEMORANDUM OPINION AND ORDER OF COURT**

October 14, 2008

Presently before the Court for disposition is the MOTION FOR SUMMARY

JUDGMENT, with brief in support, filed by Defendant, Allegheny Energy Service Corporation,

(*Document Nos. 21 and 22,* respectively), Plaintiff's brief in opposition (*Document No. 28*),

and the REPLY BRIEF filed by Defendant (*Document No. 31*).

The issues have been fully briefed and the matter is ripe for disposition.  The factual

record has also been thoroughly developed via DEFENDANT'S STATEMENT OF

UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY

JUDGMENT  (*Document No. 23*), PLAINTIFF'S RESPONSE TO DEFENDANT'S

STATEMENT OF UNDISPUTED MATERIAL FACTS (*Document No. 29*), the APPENDIX

TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (*Document No. 24)*, the

APPENDIX TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR

SUMMARY JUDGMENT ( *Document No. 30*),  and the SUPPLEMENTAL APPENDIX TO

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (*Document No. 32*).

After careful consideration of Defendant's motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Barry J. Heilman, on his claims of age discrimination and retaliation. Therefore, for the reasons that follow, the Motion for Summary Judgment will be granted in its entirety.

## PROCEDURAL BACKGROUND

Plaintiff filed this civil rights action on July 24, 2007, pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* Specifically, Plaintiff contends that Defendant, Allegheny Energy Service Corporation ("Allegheny"), returned him to his previous position discriminatorily based on his age, as well as in retaliation for deposition testimony he provided in a co-worker's age discrimination and retaliation case against Allegheny. Defendant has filed the instant motion for summary judgment in which it contends that Plaintiff is unable to establish a *prima facie* case on either his age discrimination and/or retaliation claims.

## BACKGROUND

As the law requires, all disputed facts and inferences are to be resolved most favorable to the Plaintiff.

### Residency Requirement

Plaintiff was born on July 4, 1954. In February 1973, Allegheny hired him as a temporary laborer. He eventually progressed to the position of lead lineman in Allegheny's

Kittanning Service Center, where he is employed today. Except for six (6) months, Plaintiff has continuously been employed at the Kittanning Service Center.

Allegheny provides power to commercial and residential customers across a substantial portion of Pennsylvania and in West Virginia, Virginia, Ohio, and Maryland. It is not disputed that Allegheny needs to provide a prompt and efficient restoration of power in the event of a power outage to assure the public a quick response to emergency conditions. Linemen and servicemen are frequently called out from their homes to perform emergency repairs to remedy power outages.

Because of the required quick response to emergency conditions, Allegheny has a residency requirement that requires all linemen and servicemen that work at any Allegheny Service Center in Pennsylvania to live within a thirty (30) minute drive of their assigned service center. If a lineman or serviceman does not live within thirty (30) minutes of his or her assigned service center, the lineman or serviceman must move his or her residence to comply with the requirement. If a lineman or serviceman transfers to a new service center but does not satisfy the residency requirement for that service center, he or she can either move their residence or return to his or her previous position. The residency requirement is a qualification for any lineman or serviceman position at Allegheny, regardless of age, seniority, or competency.

Plaintiff is a member of Local Union No. 102, Utility Workers Union of America ("Local 102"). Pursuant to the Collective Bargaining Agreement ("CBA") between Allegheny and Local 102, on or about March 14, 2006, Allegheny posted two (2) openings for newly-created weekend lineman positions at its Arnold Service Center. The bid postings for the

weekend lineman position clearly stated in capital letters and in bold print that one of the "MINIMUM QUALIFICATIONS AND REQUIREMENTS" all applicants for the position must meet was Allegheny's residency requirement, *to wit:* **"EMPLOYEE MUST MEET THE RESIDENCY REQUIREMENT."** *See* March 14, 2006, Bid Posting, Def's Appendix at Ex. C.

All bid postings for lineman positions at all Allegheny Service Centers contain the residency requirement language. Plaintiff testified in his deposition that he understood that the residency requirement meant that he must live within thirty (30) minutes of the Arnold Service Center to be qualified for the weekend lead lineman position.

Plaintiff and Michael Wright, ("Wright") (who was a lead lineman with Plaintiff at the Kittanning Service Center and was born in 1956), were awarded the two (2) Arnold Service Center positions as the most senior bidders. Both men started at the Arnold Service Center on or about April 24, 2006.

Plaintiff resides in Ford City, Pennsylvania; the Arnold Service Center is located in Arnold, Pennsylvania. In his deposition, Plaintiff testified that he did not time the drive between his home and the Arnold Service Center before he bid for the position. However, Plaintiff also testified that based on his long familiarity with the area, he was aware that he lived within a thirty (30) minute drive of the Arnold Service Area.

From April through July, 2006, Gary Riggs ("Riggs") was the direct supervisor of Plaintiff and Wright. In July 2006, Jon Fink ("Fink") became the direct supervisor of Plaintiff and Wright. Both Riggs and Fink have the title "Manager, Electric Operations" at the Arnold Service Center. During a safety meeting that occurred three ( 3) to four (4) months after

4

Plaintiff began working at the Arnold Service Center, Riggs informed Plaintiff that someone might be driving to his house to see if he met the requisite residency requirement. Thereafter, Riggs and Roger Heasley (General Manager, Operations Arnold Jeannette Latrobe Region) drove the route between Plaintiff's residence in Ford City and the Arnold Service Center twice using two different routes. The first route took 54 minutes and the second route took 40 minutes.

As Plaintiff's six-month probationary period was to close at the end of October 2006, Mike Hosier, the immediate supervisor to Jon Fink, instructed Fink to personally determine whether Plaintiff met the residency requirement. On October 19, 2006, Fink timed the trip between Plaintiff's home and the Arnold Service Center at 34 minutes. On October 20, 2006, Fink told Plaintiff that he did not meet the residency requirement and instructed him to report to the Kittanning Service Center on October 30, 2006. Plaintiff suggested that Fink drive a different route.

On Saturday, October 21, 2006, Tim Medice, the Local 102 Area Vice President, informed Plaintiff that it took him 38 minutes to drive from Plaintiff's residence to the gate of the Arnold Service Center.

On October 23, 2006, Fink drove the alternate route as suggested by Plaintiff and timed the trip at 33 minutes. Fink then informed Plaintiff for a second time that he did not meet the residency requirement and, therefore, he had to return to his lead lineman position at the Kittanning Service Center. In a letter dated October 27, 2006, Fink informed Plaintiff for

the third time of his failure to meet the requisite residency requirement and, therefore, Plaintiff must return to work at the Kittanning Service Center on Monday, October 30, 2006.[1]

After Plaintiff returned to the Kittanning Service Center, the weekend lead lineman position at the Arnold Service Center that he vacated was reposted and filled by Doug Allan, born in 1960.

### Protected Activity

In October 2004, Plaintiff and Wright both submitted letters to Allegheny in support of one of their co-workers, Todd Gladysiewski, who had filed an age and retaliation claim against Allegheny. On June 27, 2006, while working at the Arnold Service Center, Plaintiff and Wright both testified in a deposition in the Gladysiewski case.

It is not disputed that at the time Fink informed Plaintiff that he had to return to his former position at the Kittanning Service Center, Fink was not aware that Plaintiff had provided deposition testimony in the Gladysiewski case or that Plaintiff had spoken out in support of Gladysiewski in any way.

It is also not disputed that Wright continues to work at the Arnold Service Center and that he was not required to return to his previous position at the Kittanning Service Center because he satisfied the residency requirement.

---

[1] Plaintiff's previous lead lineman position in Kittanning had remained open because there is a six-month probationary period on any new position for union members. Therefore, Plaintiff's position was held open for the six months during which he had to decide whether he wanted to stay at the Arnold Service Center, assuming he met all the qualifications for the job.

## The EEOC Charge

On October 26, 2006, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") in which he charged age discrimination and retaliation based on his support of Gladysiewski. A Dismissal and Notice of Rights was issued by the EEOC on April 27, 2007. Plaintiff never filed a grievance with Local 102.

Plaintiff filed this lawsuit on July 24, 2007.

## DISCUSSION

As stated above, Plaintiff claims that Allegheny discriminated against him on the basis of his age and retaliated against him because he provided deposition testimony in support of a co-worker's age discrimination and retaliation case against Allegheny. Allegheny responds that its decision to return Plaintiff to his former lead lineman position at the Kittanning Service Center was based on Plaintiff not satisfying the residency requirement for the Arnold position on which he bid. The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 526-27 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993).

Because Plaintiff has no direct evidence of any discrimination or retaliation, each of his claims is subject to the familiar *McDonnell Douglas* formulation[2] regarding the appropriate burdens of proof and allocation of production of evidence which govern and guide the analysis of the evidence presented on a motion for summary judgment. Accordingly, the plaintiff bears

---

[2]     *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

the initial burden of presenting a *prima facie* case of age discrimination and/or retaliation. Should the plaintiff make this showing, a presumption of discrimination / retaliation is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its decision. *Fuentes*, 32 F.3d at 763; *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir.1990).

The employer need only produce sufficient evidence to enable a factfinder to conclude that the action taken was motivated by a nondiscriminatory and/or nonretaliatory purpose. *Fuentes*, 32 F.3d at 763. If the defendant is able to clear this relatively low hurdle, the presumption evaporates and the onus is again on the plaintiff, who bears the ultimate burden of showing that a discriminatory and/or retaliatory purpose was a determinative factor in the decision. *Id*. at 764; *Bellissimo*, 764 F.2d at 179-80. The plaintiff can either prove this directly, by showing that discriminatory and/or retaliatory considerations motivated the defendant's actions, or indirectly, by showing that the rationale provided by the defendant is unworthy of credence. *Josey*, 996 F.2d at 638; *Weldon*, 896 F.2d at 797.

A.      Age Discrimination

As its title suggests, the ADEA prohibits age discrimination in employment. Specifically, the ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To satisfy his initial burden for his age discrimination claim, Plaintiff must show each of the following: (i) he is a member of a

protected class, i.e., over the age of forty; (ii) he was qualified for the position of weekend lead lineman at Arnold; (iii) he suffered an adverse employment decision; and (iv) the circumstances were such that a reasonable person could draw an inference of age discrimination.[3]  *Johnson v. McGraw-Hill Companies*, 451 F. Supp. 2d 681, 694 (W.D. Pa. 2006).

Plaintiff argues "that the residency requirement has never been raised as an issue with either [Keith] King or [Ryan] Moore, who are 9 and 24 years younger than Plaintiff, respectively. . . . Accordingly, similarly situated, substantially younger employees were treated more favorably than Plaintiff . . . ."  Pl's Br. at 9.

It is undisputed that Plaintiff has established the first element of his *prima facie* case, i.e., that he is a member of a protected class.  However, Allegheny argues that Plaintiff cannot establish the second, third or fourth elements.

Plaintiff testified that he routinely made the commute from his residence to the Arnold Service Center in less than thirty (30) minutes and timed his commute at just over 27 minutes on two (2) separate occasions.  However, it is not disputed that two Allegheny

---

[3]       The Court states the fourth element broadly enough to encompass different circumstances in which an inference of age discrimination could reasonably be drawn. While some courts state the fourth element as requiring that the plaintiff show that he or she was treated differently than a similarly situated, sufficiently younger individual, such a showing is not required where there is other evidence which tends to support an allegation that age discrimination has occurred.  These factors are relevant for their evidentiary value (or lack thereof) in creating an inference that age actually motivated (or did not motivate) the challenged decision. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313 (1996).  If the individual compared to the plaintiff is not similarly situated, or if he or she is not sufficiently younger than the plaintiff, the plaintiff can still satisfy the *prima facie* hurdle by presenting other circumstantial evidence that age actually motivated the employer's decision.  *Fitzpatrick v. National Mobile Television*, 364 F. Supp. 2d 483, 491-492, n. 4 (M.D. Pa. 2005).

managers (Riggs and Fink), as well as the Local 102 Area Vice President, separately timed the drive between Plaintiff's residence in Ford City and the Arnold Service Center, including driving a route identified by Plaintiff, and each time the commute took longer than thirty (30) minutes.

Additionally, Plaintiff contends that he did not know that he did not meet the residency requirement until it was too late to relocate. However, the residency requirement was clearly stated on the March 14, 2006, bid posting for the weekend lead lineman position at the Arnold Service Center as a minimum qualification and requirement, *to wit:*

**MINIMUM QUALIFICATIONS AND REQUIREMENTS:**

The following minimum qualifications and requirements must be met in order to obtain and retain this classification:

. . .

8.  Special. Must possess an appropriate state motor vehicle operator's license and be able to safely operate motor vehicles. Demonstrate satisfactory knowledge of appropriate state motor vehicle code as it applies to the operation of trucks and trailers on public highways. **EMPLOYEE MUST MEET THE RESIDENCY REQUIREMENT.**

*See* Def's Ex. B, Bid Posting, March 14, 2006 (emphasis in original). Plaintiff admitted in his deposition that he did not time the commute from his home to the Arnold Service Center before he bid on the Arnold lead lineman position.

Based on the undisputed summary judgment record, the Court finds and rules that Plaintiff was not qualified for the Arnold Service Center position as he did not meet the requisite residency requirement and, thus, is unable to prove his *prima facie* case.[4]

However, assuming *arguendo* that Plaintiff established a *prima facie* case of age discrimination, the Court would nevertheless grant summary judgment because the Court finds and rules that Plaintiff has failed to adduce any evidence from which a reasonable factfinder could (i) disbelieve Defendant's articulated nondiscriminatory reason or (2) otherwise believe that an invidious discriminatory reason was more than not a motivating or determinative cause for Defendant's decision to return Plaintiff to his former position at the Kittanning Service Center. *See Fuentes*, 32 F.3d at 764.

Plaintiff argues that there is evidence that Allegheny did not strictly adhere to its residency requirement. In support of this argument, Plaintiff points to Keith King (born in 1963), a lineman at the Arnold Service Center, who lives in Templeton, PA, and who testified that it takes him approximately thirty-five (35) minutes to travel from his residence to the Arnold Service Center. However, the summary judgment record reflects that King moved to Templeton, PA over ten (10) years ago, and had different supervisors than Plaintiff. King testified that in 1997 he approached his supervisor, Jack Bowser, and asked permission to move to Templeton, PA. Bowser replied that he would have to drive the route to make sure it was within the residency requirement. When Bowser finally gave King the approval to move to Templeton and stay working at the Arnold Service Center, he told King that Templeton was

---

[4]     Because the Court finds that Plaintiff is not able to meet the second element of his *prima facie* case of age discrimination, it is not necessary for the Court to address Allegheny's additional arguments which pertain to the third and fourth elements.

beyond the 30-minute residency requirement, but was not so far that it would prevent Bowser from giving permission to King to move to Templeton, PA.

Plaintiff also points to Ryan Moore (born in 1978), a meter reader at the Arnold Service Center from 2000 through March 2008, who testified that it took him approximately thirty-six (36) minutes to travel from his residence to the Arnold Service Center. The summary judgment record reflects that not only did Moore have a different supervisor than Plaintiff, he worked as a meter reader, not a lineman. The summary judgment record reflects that the residency requirement only applied to linemen and servicemen, not meter readers.

Plaintiff does not dispute that several younger employees who failed to meet the residency requirement were required to transfer to a service center where they did meet the residency requirement. For example, Nick Randolph (born in 1980) and Grant Pence (born in 1981) started employment at the Arnold Service Center, did not meet the thirty (30) minute residency requirement, and were required to transfer to a service center (the Jeannette Service Center) where they met the residency requirement. Similarly, Keith Melville (born in 1959) successfully bid for a position at the Boyce Service Center. However, because he did not meet the thirty (30) minute residency requirement, he had to return to his original position at the Charleroi Service Center.

The Court further finds and rules that the summary judgment record is utterly devoid of any evidence which demonstrates that Plaintiff's age was a factor in the decision to return Plaintiff to his former position at the Kittanning Service Center; rather Plaintiff relies upon his own "unsupported assertions, conclusory allegations, or mere suspicions." Mere speculation is not sufficient to establish a *prima facie* case of age discrimination. *See, e.g., Bailey v.*

*Principi*, 2003 U.S. Dist. LEXIS 15538 at \*19 (E.D. Pa. Aug. 20, 2003) ("[T]he plaintiff . . . must demonstrate the existence of sufficient facts to allow him to prove by a preponderance of the evidence that a *prima facie* case of discrimination exists that goes beyond the plaintiff's mere speculation.") *Bullock  v. Children's Hosp. of Philadelphia*, 71 F. Supp. 2d 482, 490 (E.D. Pa. 1999) ("[T]he Plaintiff must prove by a preponderance of the evidence that a *prima facie* case of discrimination exists.  It does not suffice to suggest the mere possibility of discrimination.")

The record reflects that Allegheny consistently applied its residency requirement rules without regard to age and Plaintiff has submitted nothing to suggest that Allegheny's proffered reason for returning him to his former position is a pretext for age discrimination. For all of these reasons, summary judgment will be granted to Allegheny on Plaintiff's age discrimination claim.


B.      Retaliation

Plaintiff also claims that the decision of Allegheny to return him to his lead lineman position in Kittanning was in retaliation for his deposition testimony in the Gladysiewski case.

To satisfy his initial burden for his retaliation claim, Plaintiff must show each of the following: (i) that he engaged in protected activity; (ii) after or contemporaneous with engaging in that conduct, Allegheny took a materially adverse action against him; and (iii) there was a causal connection between Plaintiff's participation in the protected activity and the adverse actions.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006).

It is undisputed that Fink, the manager who confirmed that Plaintiff did not meet the residency requirement and who informed Plaintiff that he had to return to Kittanning for failing to meet the residency requirement, was not aware that Plaintiff had provided deposition testimony in the Gladysiewski case.

Plaintiff argues, however, that "Mr. Fink did not act on his own initiative. Rather, Mr. Fink testified that he was instructed to test whether Plaintiff met the residency requirement by his immediate supervisor, Mr. Hosier. Unlike Mr. Fink, who did not begin working at the Arnold Service Center until July 2006, Mr. Hosier was employed at Arnold at the time that Plaintiff gave his deposition on June 27, 2006." Pl's Brief in Opp'n, at 12. However, Plaintiff has failed to present any evidence whatsoever that Hosier knew of the deposition testimony given by Plaintiff in the Gladysiewski case. In fact, Hosier, in his sworn Declaration refutes Plaintiff's argument and states, in pertinent part, as follows:

> 4. In October 2006, Jon Fink informed Mr. Heilman that he did not meet the residency requirement and informed him that he would have to return to his previous lead lineman position at the Kittanning Service Center.
>
> 5. <u>At that time, I had no knowledge that Mr. Heilman had provided deposition testimony in a case brought by one of his co-workers, Todd Gladysiewski, against Allegheny. I also had no knowledge that he had ever previously spoken out in any way in support of Mr. Gladysiewski.</u> In fact, I did not know Mr. Gladysiewski at all.

Def's Supp. Appendix, Exh. 4 (emphasis added).

Similar to his age discrimination claim, the Court finds that Plaintiff has simply failed to present any evidence to show that retaliation was a factor in Allegheny's decision to return Plaintiff to his former position in the Kittanning Service Center or that he was returned to his former position for reasons other than those articulated by Allegheny, i.e., he did not

qualify because he did not meet the requisite residency requirement. Accordingly, the Court will grant the summary judgment motion filed by Defendant on Plaintiff's retaliation claim.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons discussed *supra,* the Court finds that Plaintiff has not shown by any evidence that Defendant intentionally discriminated against him because of his age or that Defendant retaliated against him for his deposition testimony. Furthermore, in the alternative, the Court finds and rules that Plaintiff has failed to adduce any evidence from which a reasonable factfinder could (i) disbelieve Defendant's articulated nondiscriminatory/ nonretaliatory reasons or (ii) otherwise believe that an invidious discriminatory / retaliatory reason was more than not a motivating or determinative cause for Defendant's decision to return Plaintiff to his previous position. Therefore, the Motion for Summary Judgment filed by Defendant will be granted in its entirety.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARRY J. HEILMAN,          )
                                          )

               Plaintiff,       )
                                          )

                v.           )        02:07cv1034
                                          )

ALLEGHENY ENERGY SERVICE    )
CORPORATION,                 )
                                          )

             Defendant.     )

## ORDER OF COURT

AND NOW, this 14th day of October, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that the Motion for Summary Judgment filed by Defendant Allegheny Energy Service Corporation (*Document No. 21*) is **GRANTED** and judgment is hereby entered in favor of Defendant, Allegheny Energy Service Corporation, and against Plaintiff, Barry J. Heilman.

                         BY THE COURT:


                         s/ Terrence F. McVerry
                         United States District Court Judge

cc:      Dirk D. Beuth, Esquire
Law Office of Neal Alan Sanders
Email: dbeuth@penn.com

Neal A. Sanders, Esquire
Law Offices of Neal Sanders
Email: lonas@earthlink.net

J. Scott Carr, Esquire
Wargo & French
Email: scarr@wargofrench.com


Michael D. Kabat, Esquire
Wargo & French
Email: mkabat@wargofrench.com